**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                Plaintiffs,

    v.

DEPARTMENT OF STATE,

                Defendant.

No. 1:11-CV-01072 (CKK)

---

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the Nation's Capital
4301 Connecticut Avenue, NW, Suite 434
Washington, DC 20008
Tel: (202) 457-0800
Fax: (202) 452-1868
artspitzer@gmail.com

Ben Wizner
Nathan Freed Wessler
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654
bwizner@aclu.org
nwessler@aclu.org

*Counsel for Plaintiffs*

February 27, 2012

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. i

**INTRODUCTION** ............................................................................................................ 1

**ARGUMENT** ................................................................................................................. 2

**CONCLUSION** ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Def.*, 628 F.3d 612 (D.C. Cir. 2011) .................................................................. 6

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) ................................................... 3

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ........................................................ 3

*Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) ................................................... 3

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ............................................................................ 5

*Scott v. CIA*, 916 F. Supp. 42 (D.D.C. 1996) ................................................................................. 4

*Wash. Post v. U.S. Dep't of Def.*, 766 F. Supp. 1 (D.D.C. 1991) .................................................. 4

**Other Authorities**

Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ....................................................... 5, 9

Fed. R. Civ. P. 56(a) ...................................................................................................................... 5

**INTRODUCTION**

The government devotes a significant portion of its reply brief to arguing that there has been no official acknowledgement of the authenticity of the requested records and therefore no waiver of the government's withholding claims under Exemption 1 of FOIA.   *See* Def.'s Reply Mem. in Supp. of Mot. for Summ. J. and in Opp'n to Pls.' Cross-Mot. for Summ. J. ("Gov't Reply") 4–12, ECF No. 20.  Plaintiffs show below that the government is wrong, but the Court need not even reach this issue because the government's failure to demonstrate harm is fatal to its Exemption 1 claim.  The insufficiency of the Walter Declaration and the failure of the government to identify additional harms that would occur in light of the prior release of the requested records mean that the government has not carried its burden on summary judgment.  Thus, regardless whether the government's withholding claims have been waived, the government has not demonstrated that the requested records are properly classified and therefore may not withhold them from release.  Plaintiffs have presented evidence, uncontroverted by the government's declaration, that any harm caused by release of the cables has already occurred, and are entitled to summary judgment in their favor.

Moreover, the State Department ("DOS") *has* officially acknowledged the authenticity of the requested records, and therefore has waived its withholding claims under Exemptions 1, 6, and 7.  By confirming that the 23 requested cables are authentic DOS records and by releasing portions of 11 cables that are *identical* to the text of the cables released by Wikileaks, the government has foreclosed any argument that it may continue to withhold the cables from release.  Any implication that the text of the cables released by Wikileaks is fraudulent or inauthentic simply lacks plausibility.  This Court should decide this case based on real facts in

the real world, not in the imaginary, through-the-looking-glass world in which the government
wishes to have it decided.

## ARGUMENT

1.      The Walter Declaration failed to demonstrate harm under Exemption 1, and the
government's arguments to the contrary are unavailing.  The government asserts that the Walter
Declaration "has described in detail" the harms that would result from disclosure of the requested
records.  Gov't Reply 12.  Although the government's declaration does provide descriptions of
purported harms, nowhere does it address the *relevant* harms given the facts of this case, where
the full contents of each of the requested cables is already in the public domain.  The government
makes much of its declarant's assertion that "I have considered all relevant factors as to whether
this information may be released, including the fact that, to the best of my knowledge, no
authorized Executive Branch official has disclosed the withheld information in the public
domain."  Walter Decl. ¶ 10; Gov't Reply 14–15.  However, that sentence is the full extent of the
declaration's engagement with the prior disclosure of the requested records, and it is far too
insubstantial a foundation to support the government's arguments.  The declaration says nothing
about Wikileaks' release of the requested cables or about whether additional harms would result
from the government's disclosure of the requested records now, in light of the Wikileaks release.
If the declaration meant to assert that each of the harms it discusses would occur even now, after
the release and extensive public discussion of the cables, it did not say so.  Rather, it discussed
harms as if the cables were not already available to the public.  Although the government's reply
brief recognizes, as it must, that the State Department "is aware of the publication of the
purported government documents by WikiLeaks," Gov't Reply 13, the Walter Declaration
wholly fails to exhibit such awareness. For purposes of demonstrating harm, it matters not that

State Department spokespersons and other officials have spoken about the release of cables by

Wikileaks if the government's declaration in this case, which constitutes the government's

evidence in support of summary judgment, ignores the cables' prior release.[1]

A declaration is insufficient if it lacks detail or fails to account for contrary record

evidence.  *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998); *Military

Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  The Walter Declaration does

include many details and claims, including about purported harms, and Plaintiffs do not contest

that it provides sufficiently detailed descriptions of the search and processing of Plaintiffs'

request and the contents of the requested records.  But the declaration omits completely any

discussion of potential harm that takes account of the prior release of the cables, and therefore

wholly lacks detail on a dispositive issue.  Additionally, as argued in Plaintiffs' opposition brief,

the Walter Declaration's presentation of harms as if there had been no prior release of the cables

is controverted by Plaintiffs' record evidence, including the full text of the cables from

Wikileaks and the citations to the extensive press coverage of and foreign government response

to the Wikileaks release.  Opp. 10–13.  In the real world, the harms the Walter Declaration

describes have already occurred, and the declaration provides no support to the claim that

---

[1] The government misconstrues Plaintiffs' opposition brief as arguing that the State Department has, as a general matter, ignored the disclosure of the cables by Wikileaks.  Gov't Reply 14.  That is not Plaintiffs' claim; indeed, Plaintiffs specifically quoted statements of DOS officials' acknowledging the Wikileaks releases.  *See* Pls.' Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Opp.") 5–6, ECF No. 18.  Rather, Plaintiffs' argument is that the Walter Declaration ignored the public availability of the cables in its presentation of harms.  *Id.* at 10–13.  The government's claims on summary judgment must succeed or fail on the strength of its declarations, and the Walter Declaration is simply inadequate.  *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987) ("[T]he agency bears the burden of justifying its decision to withhold requested information.  The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed . . . .").

additional harms would occur from government release of the cables now.  The declaration is

therefore insufficient and not entitled to deference.

The government cites cases holding that official disclosure of information already in the

public domain could cause additional harms.  Gov't Reply 16–17.  Undoubtedly, some cases

have so held, and in some situations additional harm might occur, but that does not mean that the

government automatically prevails simply by citing such cases in its brief.  The government's

declaration must address the issue and explain what the additional harms would be on the facts of

this case.  *See Scott v. CIA*, 916 F. Supp. 42, 50 (D.D.C. 1996); *Wash. Post v. U.S. Dep't of Def.*,

766 F. Supp. 1, 12–13 (D.D.C. 1991).  Just because additional harms could result in some

situations does not mean that additional harms will necessarily result in every case.  Moreover,

the government's citation to cases cannot substitute for the requirement that the agency's

declaration adequately address each relevant issue.

The Walter Declaration leaves numerous central questions not only unanswered, but

totally unaddressed:  Have certain foreign governments thus far ignored the release of the cables

by Wikileaks such that release by the State Department would trigger a different reaction or new

harm?  Given that the State Department has already betrayed foreign officials' confidences by

failing to protect the cables from unauthorized release, what additional harms would result from

official release now?  Plaintiffs provided evidence that the State Department has apologized to

foreign governments for the release of the cables by Wikileaks, *see* Opp. 25 & n.16; can the

government demonstrate that no such apologies were issued to the governments discussed in the

23 requested cables or that those governments would view the State Department's release of the

requested cables as more damaging than the government's previous acknowledgements of the

release of more than 250,000 State Department cables by Wikileaks?  Can the government

identify any new harms, beyond those that already occurred upon initial release of the cables, that would be likely to arise out of release of the cables by the State Department?  The government cannot justify withholding unless it answers, through a proper declaration, these and other questions raised by Plaintiffs' opposition brief and accompanying evidence.

The proper remedy for an insufficiently detailed or factually controverted declaration is to deny the government's motion for summary judgment.  *See Morley v. CIA*, 508 F.3d 1108, 1125 (D.C. Cir. 2007).  Accordingly, the Court should deny the government's motion for summary judgment.

Further, Plaintiffs have met their burden of demonstrating that "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law" on their cross-motion for summary judgment. Fed. R. Civ. P. 56(a).  The copies of the cables released by Wikileaks attached to the Wessler Declaration and the press articles cited in Plaintiffs' opposition brief establish that the requested records are already in the public domain, and that any feared harms of release have already occurred.   The Court can easily determine that the cables released by Wikileaks are the same as the cables identified by the government, and these facts show that the cables are no longer properly classified and that Plaintiffs are therefore entitled to summary judgment and release of the requested records in full.[2]

2.      Plaintiffs do not dispute that the unauthorized disclosure of classified information does not result in its *automatic* declassification.  *See* Gov't Reply 14 & n.5 (citing Exec. Order No. 13,526, § 1.1(c), 75 Fed. Reg. 707 (Dec. 29, 2009)).  Plaintiffs have never contended otherwise.  Rather, Plaintiffs argue that after weighing the evidence of harm and considering the

---

[2] Plaintiffs explain below that the government has confirmed the authenticity of the requested cables in its public statements and its response to this litigation, and the relevance of that confirmation.

parties' arguments, the Court should independently conclude that the continued classification of the requested records is not justified.  The requested cables are already in the public domain and the purported harms from official release have already occurred.  Release of the cables in full by the State Department would cause no additional harm.

The government tells the Court that Plaintiffs' "view on th[e] question [of harm] is of no real consequence."  Gov't Reply 17.  Yet, Plaintiffs are not merely speculating about the lack of additional harms or presenting a theory contrary to assertions made in a government declaration to which the Court owes deference.  Rather, Plaintiffs have presented evidence controverting the contents of the government's declaration.  The government's declaration is therefore owed no deference, and does not support summary judgment in the government's favor.  By presenting evidence that the harms feared by the government have already occurred, Plaintiffs have provided a firm basis for obtaining the relief they seek in their cross-motion for summary judgment.

3.      The government cites a recent decision, *ACLU v. Department of Defense*, 628 F.3d 612 (D.C. Cir. 2011), in support of its argument that only prior official disclosures of the requested records can vitiate the national-security harm of a subsequent official release.  Gov't Reply 15–16.  Because the government has acknowledged the authenticity of the requested cables, as discussed below, that case does not govern the outcome here.  Even if the State Department had not acknowledged the authenticity of the cables, however, *Department of Defense* would not require a grant of summary judgment to the government.  *Department of Defense* stated that "[t]he 'officially acknowledged' test recognizes that even if information exists in some form in the public domain that does not mean that official disclosure will not cause harm cognizable under a FOIA exemption."  628 F.3d at 625.  That language recognizes

that pointing to the existence of information in the public domain will not necessarily be sufficient to demonstrate a lack of harm.  It does *not* divest the government of its burden of proving harm.  Where, as here, the government's declaration fails to recognize the existence of the requested information in the public domain or to explain why court-ordered release of the information would cause additional harm, and where Plaintiffs have provided evidence that the feared harms have already occurred, the government has not met its burden of showing that release of the records would cause damage to the national security.

    4.    The government protests Plaintiffs' claim that the State Department has acknowledged the authenticity of the requested cables through public statements of DOS officials and through the Department's response to this litigation.  But what the government characterizes as an "untenable leap of reasoning," Gov't Reply 12, is really a matter of simple logic.  In response to Plaintiffs' request, the government confirmed the existence of all 23 requested records and released 11 of them in part.  As demonstrated in Plaintiffs' opposition brief, the 23 cables identified by the government as authentic State Department records have the same dates, Message Reference Numbers, originating embassies, and titles as the 23 cables previously released by Wikileaks.  Indeed, Plaintiffs would not have known that these 23 cables existed, much less their dates, reference numbers or titles, had it not been for the Wikileaks release.  Moreover, the government's reply brief does not address the highly relevant fact that the unredacted portions of the 11 partially released cables are *identical* to the text of the cables released by Wikileaks.  The government seems to imply that the cables released by Wikileaks might be inauthentic or perhaps might contain altered text.  *See* Gov't Reply 17 (arguing that an unsanctioned release of records "necessarily preserves some increment of doubt regarding the reliability of the publicly available information").  But that claim lacks credibility here.  The

7

officially released information about and contents of the 23 cables are a precise match with the documents released by Wikileaks, and any suggestion that the text of the cables released by Wikileaks is fraudulent lacks plausibility.  The government has access to the text of the cables released by Wikileaks, but it has not alleged in its declaration or briefs that the Wikileaks text differs from the text of the cables withheld by the government.  As set forth in Plaintiffs' opposition brief, the government's official statements have provided confirmation of the cables' authenticity.

5.      The government claims that, because Plaintiffs' FOIA request did not describe the requested cables as having been previously released by Wikileaks, its response to the request provided no acknowledgement of the authenticity of the cables released by Wikileaks.  Gov't Reply 11–12 & n.4.  But whether or not the request mentioned Wikileaks cannot be dispositive. The most salient fact in the pending motions is that the government acknowledged the existence and authenticity of all 23 requested cables in its response to this litigation, and that those cables are already available to the public.  It is simply not rational to suggest that the exact match between the cables identified by the government and the cables released by Wikileaks is somehow a mere coincidence.  Accepting the government's suggestion to this effect would require a monumental suspension of disbelief.  That Plaintiffs' request did or did not describe the Wikileaks release does not affect the relevance of the government's confirmation of the authenticity of the requested cables, and that confirmation controls.[3]

---

[3] The government's position creates a perverse incentive for requestors to submit broader requests that would be more difficult for the government to process.  If Plaintiffs' request had sought all 251,287 State Department cables released by Wikileaks and mentioned the Wikileaks release, the statements of numerous State Department officials confirming the Wikileaks release as a whole would match the request in specificity and scope, and so would constitute an official acknowledgement of the authenticity of the whole set of requested cables.  Instead of forcing the government to undertake the onerous exercise of conducting a classification review of all

The government further complains that Plaintiffs' position "would require the Government to engage in the impossible task of determining, in response to every FOIA request, whether a document had previously been part of an unauthorized disclosure."  Gov't Reply 12 n.4.  But because the prior public release of government records weighs on the harm analysis required by § 1.1(a)(4) of the Executive Order, *see* Opp. 13–20, the government must already take such information into account.  Moreover, the Court is not presented here with a marginal case where information subject to the request was previously disclosed in a little-noticed or long-forgotten leak.  The records requested by Plaintiffs were made public pursuant to the largest disclosure of State Department cables in history, an extremely well-publicized event to which the government responded immediately and continues to respond.  The Court should be guided by the facts of this case, not by the government's surmise about issues that might be raised in other hypothetical, factually distinct cases.

6.     Contrary to the government's claims, the public availability and government confirmation of the authenticity of the requested cables defeat the government's invocation of Exemptions 6 and 7.  *See* Gov't Reply 18–23.  The government persists in the charade that the identities of the individuals whose names it seeks to protect are not already public.  But, as

---

251,287 cables, however, Plaintiffs requested only a small subset of them relevant to Plaintiffs' ongoing public education and advocacy work.  If release of the entire set of cables has been confirmed, surely a subset of that release has been confirmed as well.  The government's position discourages restraint in crafting FOIA requests by implying that only the broadest request could succeed.  In any event, Plaintiffs obviously could file a new FOIA request for these same documents, mentioning Wikileaks, tomorrow.

Moreover, the government's suggestion that it would have responded differently to the request if the request had contained the word "Wikileaks" is rather remarkable.  *See* Gov't Reply 12 n.4.  Such a request would still have sought the 23 cables by date, reference number, and title.  The government would have had the same obligation to search for the requested records, inform Plaintiffs of their existence, and justify any withholding claims.  To refuse to confirm or deny the existence of records solely on the basis that the request provided additional contextual information or an explanation of where Plaintiffs learned of the existence of the records would be unsupportable.

detailed in Plaintiffs' opposition brief, the text of the cables released by Wikileaks revealed all of the information the government desires to withhold.  *See* Opp. 27–29.  The extent of the government's charade is highlighted on page 21 of its reply brief, where it asserts that Plaintiffs' knowledge of the contents of Cable 07Tripoli943 is somehow extrapolated from the title of the cable alone.  *See* Gov't Reply 21.  To the contrary, Plaintiffs' knowledge of the contents of the cable comes from their reading of the full text of the cable released by Wikileaks, as the government well knows.  Thus, for the reasons set forth in Plaintiffs' opposition brief, the government's invocation of Exemptions 6 and 7 must fail.

7.       Plaintiffs reiterate that *in camera* review of the withheld records will allow the Court expediently to confirm that the cables in the public domain are identical to the cables withheld by the government, which bears on the central issues in this case.  *See* Opp. 20–22.  In light of the insufficiency of the Walter Declaration, *in camera* review is fully appropriate and consistent with the cases cited in Plaintiffs' opposition brief.  *In camera* review will allow the Court to confirm the accuracy and relevance of the exhibits accompanying Plaintiffs' opposition brief, and will provide additional support to Plaintiffs' entitlement to a grant of summary judgment in their favor.

## CONCLUSION

For the reasons stated above and in Plaintiffs' opposition brief, the Court should deny the Department of State's motion for summary judgment, grant Plaintiffs' cross-motion for summary judgment, and order DOS to release in full all 23 records responsive to Plaintiffs' request.  Alternatively, the Court may order the State Department to supplement the Walter Declaration with an explanation—if there is one—of the purported national security harms that would result

from disclosure of the cables in light of their prior public release and the government's

confirmation of their authenticity.

Respectfully submitted,

 /s/ Arthur B. Spitzer
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the Nation's Capital
4301 Connecticut Avenue, NW, Suite 434
Washington, DC 20008
Tel: (202) 457-0800
Fax: (202) 452-1868
artspitzer@gmail.com

Ben Wizner
Nathan Freed Wessler
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2654
bwizner@aclu.org
nwessler@aclu.org

February 27, 2012                                    *Counsel for Plaintiffs*