UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, and<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br><br>      Plaintiffs,<br><br>      v.<br><br>DEPARTMENT OF STATE,<br><br>      Defendant. | Civil Action No. 11-01072 (CKK) |

**MEMORANDUM OPINION**
(July 23, 2012)

Plaintiffs, the American Civil Liberties Union and American Civil Liberties Union Foundation (together, the "ACLU"), bring this Freedom of Information Act ("FOIA") action against Defendant, the United States Department of State (the "State Department"), seeking the disclosure of twenty-three embassy cables concerning this nation's foreign affairs. There are now two motions before the Court: the State Department's [17] Motion for Summary Judgment and the ACLU's [18] Cross-Motion for Summary Judgment. In a nutshell, the State Department claims that it has properly withheld information under FOIA Exemption 1, a tool available to agencies to shield national security and other sensitive information from public disclosure. The ACLU counters that the State Department cannot rely on Exemption 1 in this case because the embassy cables are purportedly already in the public domain after being published by third-party WikiLeaks and because the State Department has allegedly acknowledged the cables' authenticity. Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court concludes that the State Department's withholdings are justified.

Accordingly, the State Department's [17] Motion for Summary Judgment shall be GRANTED and the ACLU's [18] Cross-Motion for Summary Judgment shall be DENIED.

## I. BACKGROUND

The ACLU submitted a FOIA request to the State Department on April 12, 2011, requesting the disclosure of twenty-three embassy cables specifically identified by date, subject, originating embassy, and unique message reference number.  *See* Def.'s Stmt. of Material Facts Not in Dispute, ECF No. [17-1] ("Def.'s Stmt."), ¶¶ 1-2.[1]  The ACLU brought this action on June 9, 2011 after the State Department did not promptly produce the records.  *See* Compl. for Injunctive Relief, ECF No. [1].  Once the State Department entered an appearance, the parties agreed to postpone further proceedings while the agency completed its search and production. *See* Joint Status Report, ECF No. [11]; Def.'s Unopposed Mot. to Extend Production Deadline, ECF No. [12].  The State Department ultimately located all twenty-three embassy cables requested by the ACLU.[2]  *See* Def.'s Stmt. ¶¶ 4-5.  On October 21, 2011, it produced eleven of the embassy cables with partial withholdings and withheld the remaining twelve cables in full, citing FOIA Exemptions 1, 6, and 7 as the bases for non-disclosure.  *See* Decl. of Sheryl L. Walter, ECF No. [17-2] ("Walter Decl."), Ex. 5 (Ltr. from A. Galovich to B. Wizner dated Oct. 21, 2011) at 1.  The twenty-three embassy cables cover a range of sensitive subjects, including investigations of individuals suspected of acts of terrorism, bilateral relations with foreign nations, and military operations.  *See* Def.'s Stmt. ¶ 9.

Following the State Department's production, the parties briefed the pending cross-motions for summary judgment.  *See* Mem. in Supp. of Def.'s Mot. for Summ. J., ECF No. [17]

---

[1] For purposes of economy, the Court shall only cite to the State Department's statement of material facts when identifying undisputed facts.

[2] For this reason, the ACLU does not challenge the adequacy of the State Department's search.

("Def.'s [17] Mem."); Mem. in Supp. of Pls.' Opp'n to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J., ECF No. [18] ("Pls.' [18] Mem."); Def.'s Reply Mem. in Supp. of Mot. for Summ. J. and in Opp'n to Pls.' Cross-Mot. for Summ. J., ECF No. [20]; Pls.' Reply Mem. in Supp. of Pls.' Cross-Mot. for Summ. J., ECF No. [22].  The motions are fully briefed and ripe for adjudication.  In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).

## II.  LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks omitted).  However, Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (*en banc*) (quotation marks omitted), *cert. denied*, 507 U.S. 984 (1993).  To this end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material."  *Milner v. Dep't of Navy*, __ U.S. __, 131 S. Ct. 1259, 1261-62 (2011).  Despite the availability of such exemptions, "disclosure, not secrecy, is the dominant objective of the act."  *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 131 S. Ct. at 1262 (quotation marks and citation omitted).

Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review

of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure," *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate, *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In ascertaining whether the agency has met its burden, the district court may rely upon agency affidavits or declarations. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). In other words, "[u]ncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011).

### III.  DISCUSSION

The parties' cross-motions speak to the same overarching question: has the State Department properly withheld information from the twenty-three embassy cables? The Court answers this question in the affirmative. Here, the Court shall begin by explaining why it is satisfied that the State Department has properly invoked Exemption 1 as a justification for the non-disclosure of national security or other sensitive information contained in the embassy

cables.[3]  *See infra* Part III.A.  Thereafter, the Court shall explain why it is unpersuaded by the ACLU's argument that public disclosure is warranted because the cables are purportedly already in the public domain and because the State Department has allegedly acknowledged their authenticity.  *See infra* Part III.B.  Before concluding, the Court shall explain why it is satisfied that the State Department has disclosed all reasonably segregable information, *see infra* Part III.C, and why the Court declines the ACLU's invitation to review the embassy cables *in camera*, *see infra* Part III.D.

    A.    *The State Department Has Discharged Its Burden of Establishing That It Has Properly Invoked Exemption 1*

Exemption 1 applies to materials that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive Order."  5 U.S.C. § 552(b)(1).  In this case, the State Department relies upon Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526"), which prescribes a uniform system for classifying and safeguarding national security information.  To show that it has properly withheld information on this basis, the State Department must demonstrate that the information was classified pursuant to proper procedures and that the withheld information falls within the substantive scope of E.O. 13526.  *See Salisbury v. United States*, 690 F.2d 966, 971-72 (D.C. Cir. 1982) (analyzing a predecessor to E.O. 13526).  Stated somewhat differently:

> Information can be properly classified under Executive Order 13526 if four requirements are met: (1) an original classification authority classifies the information; (2) the United States Government owns, produces, or controls the information; (3) the information falls within one or more of eight protected categories

---

[3]  Although the State Department also relies on Exemptions 6 and 7 as alternative bases for withholding some information, the Court need not address whether those exemptions have been properly invoked because Exemption 1 covers all the information withheld.

5

> listed in section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damage.

*Am. Civil Liberties Union v. Dep't of Justice*, 808 F. Supp. 2d 280, 298 (D.D.C. 2011) (citing E.O. 13526 § 1.1(a)), *appeal docketed*, No. 11-5320 (D.C. Cir. Nov. 16, 2011).

It is uncontested that the State Department has satisfied the first three of these four requirements. The ACLU simply offers no rejoinder to the State Department's affirmative showing that all the information at issue (1) was classified by an original classification authority, (2) is owned, produced, or controlled by the United States, and (3) falls within one or more of the eight relevant categories. *See* Def.'s [17] Mem. at 5-9. In this Circuit, "[i]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *accord Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (*per curiam*). In the absence of a response, the Court treats as conceded the State Department's argument that it has satisfied the first three requirements under E.O. 13526. But even absent such a concession, the record is clear that all three have been met. *See* Walter Decl. ¶¶ 1, 14, 17-21, 35-76.

The parties instead focus on the fourth and final requirement, which requires "the original classification authority [to] determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and to "identify or describe the damage." E.O. 13526 § 1.1(a)(4). In this regard, the Court is mindful of its responsibility to conduct a "de novo" review of the record. 5 U.S.C. § 552(a)(4)(B). Nonetheless, in recognition that courts are generally ill-equipped to second-guess the Executive's

opinion in the national security context, "the government's burden [here] is a light one." *Am. Civil Liberties Union*, 628 F.3d at 624.  In this context, the district court "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record," keeping in mind "that any affidavit or agency statement will always be speculative to some extent, in the sense that it describes potential future harm." *Id.* at 619 (quotation marks, notations, and citations omitted); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[W]e have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review."), *cert. denied*, 540 U.S. 1104 (2004).  In the end, the "agency's justification . . . is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. Cent. Intelligence Agency*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).  For the reasons set forth below, it is both plausible and logical that the official disclosure of the information at issue in this case "reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4).

First, E.O. 13526 permits agencies to withhold information concerning "military plans, weapon systems, or operations" and "intelligence activities (including covert action), intelligence sources or methods, or cryptology." E.O. 13526 § 1.4(a), (c). Referencing these categories, the State Department has withheld information from two documents (E13 and E18) concerning details of military flight operations, the procedures for obtaining allied cooperation in the performance of military flight operations, and communications with Canadian officials revealing intelligence activities, sources, or methods. *See* Walter Decl. ¶¶ 17, 19, 54, 61, 64.  The State Department's original classification authority explains that the disclosure of this information has the potential to, among other things, inhibit the United States' ability to successfully carry out

7

military operations and enable foreign governments or persons hostile to the United States' interests to develop countermeasures to the United States' intelligence activities, sources, or methods. *See id.* It is both plausible and logical that the official disclosure of this kind of information "reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4). The Court therefore defers to the considered judgment of the Executive.

Second, E.O. 13526 permits agencies to withhold "foreign government information" and information concerning "foreign relations or foreign activities of the United States, including confidential sources." E.O. 13526 § 1.4(b), (d); *see also id.* § 6.1(k), (s) (further defining "foreign government information" and "confidential sources"). Referencing these categories, the State Department has withheld information from twenty-three documents (E1 through E11, E13, and E18 through E28) concerning, among other things, discussions, assessments, or recommendations relating to bilateral affairs with, or the policies, political situation, or security situation of, Afghanistan, Ireland, Libya, Lichtenstein, Luxembourg, the Netherlands, Pakistan, Saudi Arabia, Switzerland, Tunisia, the United Kingdom, and Yemen; and discussions, assessments, or recommendations relating to the foreign policy implications of former detainees held in United States custody under suspicion of terrorism, including complaints against United States officials pertaining to the alleged torture of detainees held in Guantanamo Bay, Cuba. *See* Walter Decl. ¶¶ 35-76. The State Department's original classification authority explains that the disclosure of this information has the potential to, among other things, degrade the confidence in the United States' ability to maintain the confidentiality of information; inhibit the United States' ability to access sources of information essential to the conduct of foreign affairs; and damage the United States' relationship with foreign governments, agencies, and officials. *See id.* ¶¶ 18, 20, 41, 42, 46, 50, 54, 59, 64, 69, 74, 76. It is both plausible and logical that the official

disclosure of this kind of information "reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4). The Court again defers to the considered judgment of the Executive.

In short, affording substantial weight and deference to the State Department's declaration, the Court finds that it is both plausible and logical that the official disclosure of the information at issue "reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4).

      B.    *The ACLU Has Failed to Discharge Its Burden of Establishing That the Prior Disclosure Doctrine Applies in this Case*

It is well established that the assessment of harm to national security is entrusted to the Executive and not the courts. *Fitzgibbon v. Cent. Intelligence Agency*, 911 F.2d 755, 766 (D.C. Cir. 1990). As set forth above, the Court is satisfied that each item of information withheld in this case falls within the scope of E.O. 13526 and that its official public disclosure "reasonably could be expected to result in damage to the national security." E.O. 13526 § 1.1(a)(4). The Court must therefore defer to the State Department's judgment. *See Ameziane v. Obama*, 620 F.3d 1, 7 (D.C. Cir. 2010) ("[T]he failure to give deference [to the government's assessment of harm] when it is due is error."), *cert. denied*, __ U.S. __, 131 S. Ct. 1673 (2011).

Nonetheless, when the specific information sought by a plaintiff is already in the public domain by an official disclosure, an agency cannot be heard to complain about further disclosure. *Wolf*, 473 F.3d at 378. Critically, public disclosure alone is insufficient; the information in the public domain must also be "officially acknowledged." *Fitzgibbon*, 911 F.2d at 765. This principle recognizes that "there can be a critical difference between official and unofficial disclosures," *id.*, and the mere "fact that information exists in some form in the public domain

does not necessarily mean that official disclosure will not cause [cognizable] harm," *Wolf*, 473 F.3d at 378. For this reason, the proponent of disclosure must meet an exacting standard:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented disclosure.

*Fitzgibbon*, 911 F.2d at 765 (citation omitted).

In this case, the ACLU contends that the twenty-three embassy cables it seeks in this action must be disclosed because they are allegedly already in the public domain after being published by third-party WikiLeaks and because the State Department has purportedly acknowledged their authenticity. The ACLU couches this basic contention in a variety of forms, but this much is clear: the ACLU has not met the exacting standard demanded by settled precedent. No matter how extensive, the WikiLeaks disclosure is no substitute for an official acknowledgement and the ACLU has not shown that the Executive has officially acknowledged that the specific information at issue was a part of the WikiLeaks disclosure. Although the ACLU points to various public statements made by Executive officials regarding the WikiLeaks disclosure, it has failed to tether those generalized and sweeping comments to the specific information at issue in this case—the twenty-three embassy cables identified in its request. Nor did the State Department acknowledge the "authenticity" of the WikiLeaks disclosure in this litigation by failing to issue a *Glomar* response. *See Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012) ("[A]n agency may issue a *Glomar* response, *i.e.*, refuse to confirm or deny the existence or nonexistence of responsive records if the particular FOIA exemption at issue would itself preclude the acknowledgment of such documents."). Because the ACLU's request made no mention of the WikiLeaks disclosure and instead

identified each cable by date, subject, originating embassy, and unique message reference number, the State Department made no admission by producing responsive records.

The Court has considered the remaining arguments tendered by the ACLU and has concluded that they are without merit. In the end, there is no evidence that the Executive has ever officially acknowledged that the specific information at issue in this case was part of the WikiLeaks disclosure (or any other public disclosure). Accordingly, the ACLU has failed to meet its burden of showing that the prior disclosure doctrine applies in this case.

> D.   *The State Department Has Discharged Its Burden of Establishing That It Has Disclosed All Reasonably Segregable Information*

Even when an agency may properly withhold a responsive record under one of FOIA's enumerated exemptions, it nevertheless must disclose any non-exempt information that is "reasonably segregable." 5 U.S.C. § 552(b). The question of segregability is by necessity subjective and context-specific, turning upon the nature of the documents and information in question. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). An agency need not, for instance, "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Id.* at 269 n.54. Ultimately, to discharge its burden before the district court, the agency "must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Id.*

In this case, the State Department explains how it carefully reviewed and released all reasonably segregable information, a process that included a line-by-line review of a small number of documents, and it has provided a sufficiently detailed description of the information withheld on a document-by-document basis. *See* Walter Decl. ¶¶ 35-77. Based upon this

account, and a searching review of the documents that the State Department has withheld only in part, the Court finds that the State Department has adequately demonstrated, in reasonable and non-conclusory terms, that all non-exempt material has either been disclosed to the ACLU or is not reasonably segregable.

      D.     *The Court Declines to Review the Embassy Cables* In Camera

In the FOIA context, the district court has broad discretion to conduct an *in camera* inspection of withheld records. *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). In this case, because the State Department's declarations are sufficiently detailed and the Court is satisfied that no factual dispute remains, the Court declines to exercise its discretion to review the embassy cables *in camera*.

### IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT the State Department's [17] Motion for Summary Judgment and DENY the ACLU's [18] Cross-Motion for Summary Judgment. An appropriate Order and Judgment accompanies this Memorandum Opinion.

Date: July 23, 2012                               _____/s/_____
                                                                   **COLLEEN KOLLAR-KOTELLY**
                                                                   United States District Judge